**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, <br><br> Plaintiff, <br><br> v. <br><br> HTC CORPORATION, <br> HTC AMERICA, INC., <br> AT&T INC., AT&T MOBILITY LLC, <br> VERIZON COMMUNICATIONS INC., <br> CELLCO PARTNERSHIP INC. D/B/A <br> VERIZON WIRELESS, <br> SPRINT CORPORATION, <br> SPRINT SOLUTIONS, INC., <br> SPRINT SPECTRUM L.P., <br> BOOST MOBILE, LLC, <br> T-MOBILE USA, INC., and <br> T-MOBILE US, INC., <br><br> Defendants. | CIVIL ACTION NO. 6:15cv475 <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Cellular Communications Equipment LLC files this Original Complaint against HTC Corporation; HTC America, Inc.; AT&T Inc.; AT&T Mobility LLC; Verizon Communications Inc.; Cellco Partnership d/b/a Verizon Wireless; Sprint Corporation; Sprint Solutions, Inc.; Sprint Spectrum L.P.; Boost Mobile, LLC; T-Mobile USA, Inc.; and T-Mobile US, Inc. (collectively, the "Defendants") for infringement of U.S. Patent No. 8,055,820 ("the '820 patent"), U.S. Patent No. 8,385,966 ("the '966 patent"), and U.S. Patent No. 9,037,129 ("the '129 patent").

**THE PARTIES**

1. Cellular Communications Equipment LLC ("CCE") is a Texas limited liability company with its principal place of business in Plano, Texas.

2. On information and belief, HTC Corporation is incorporated under the laws of Taiwan with its principal place of business at 23 Xinghau Road, Taoyuan City, Taoyuan 330, Taiwan, R.O.C. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process at its principal place of business at 23 Xinghau Road, Taoyuan City, Taoyuan 330, Taiwan, R.O.C.

3. HTC America, Inc. (with HTC Corporation, "HTC") is a Washington corporation with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, National Registered Agents, Inc., 1999 Bryan St., Suite 900, Dallas, Texas 75201-3140.

4. AT&T Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5. AT&T Mobility LLC (with AT&T Inc., "AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

6. Verizon Communications Inc. is a Delaware corporation with its principal place of business in New York, New York. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

7. Cellco Partnership d/b/a Verizon Wireless (with Verizon Communications Inc., "Verizon") is a Delaware general partnership with its principal place of business in Basking Ridge, New Jersey. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

8. Sprint Corporation is a Delaware corporation with its principal place of business in Overland Park, Kansas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9. Sprint Solutions, Inc. is a Delaware corporation with its principal place of business in Reston, Virginia. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

10. Sprint Spectrum L.P. is a Delaware limited partnership with its principal place of business in Overland Park, Kansas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

11. Boost Mobile, LLC (with Sprint Corporation, Sprint Solutions, Inc., and Sprint Spectrum L.P., "Sprint") is a Delaware limited liability company with its principal place of business in Irvine, California. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

12. T-Mobile USA, Inc. is a Delaware corporation with a principal place of business in Bellevue, Washington. T-Mobile USA, Inc. maintains a significant presence in Richardson, Texas and offers products and services under the T-Mobile and MetroPCS brands. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. This Defendant does business in the State of Texas and in the Eastern District of Texas.

13. T-Mobile US, Inc. (with T-Mobile USA, Inc., "T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington. T-Mobile US, Inc. maintains a significant presence in Richardson, Texas, and offers products and services under the T-Mobile and MetroPCS brands. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

14. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 1367.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b). On information and belief, each Defendant is deemed to reside in this judicial district, has committed acts of infringement in this judicial district, has purposely transacted business in this judicial district, and/or has regular and established places of business in this judicial district.

17. On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this State and judicial district, including: (A) at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

## COUNT I

(INFRINGEMENT OF U.S. PATENT NO. 8,055,820)

18. CCE incorporates paragraphs 1 through 17 herein by reference.

19. CCE is the assignee of the '820 patent, entitled "Apparatus, System, and Method for Designating a Buffer Status Reporting Format Based on Detected Pre-Selected Buffer Conditions," with ownership of all substantial rights in the '820 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements. A true and correct copy of the '820 patent is attached as Exhibit A.

20. The '820 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

21. Defendants HTC, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '820 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 4, 6, 9, 10, 12, 17, 21, and 24, by, among other things, making, using, offering for sale, selling and/or importing HTC mobile devices, including, for example: HTC Desire 626, HTC Desire 626s, HTC Desire EYE, HTC One A9, HTC One M9, HTC One X (AT&T), HTC Windows Phone 8X (a.k.a. HTC 8X), sold or otherwise distributed by or through AT&T (the "'820 AT&T Mobile Devices"); HTC 10 (a.k.a. HTC One M10, a.k.a.

HTC 10 Lifestyle), HTC Desire 526, HTC Desire 612, HTC Desire 626, HTC Desire 626s, HTC One M9, HTC One Remix (mini 2), and HTC Windows Phone 8X (a.k.a. HTC 8X), sold or otherwise distributed by or through Verizon (the "'820 Verizon Mobile Devices"); the HTC Desire 626s, HTC One E8, HTC One M8 Harman Kardon Edition, HTC One A9, and HTC One M9, sold or otherwise distributed by or through Sprint (the "'820 Sprint Mobile Devices"); and the HTC 10 (a.k.a. HTC One M10, a.k.a. HTC 10 Lifestyle), HTC Desire 626s, HTC Nexus 9 (a.k.a. HTC Voltantis), HTC One M9, HTC Windows Phone 8X (a.k.a. HTC 8X), sold or otherwise distributed by or through T-Mobile (the "'820 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'820 HTC Devices."

22. Defendants directly infringe the apparatus claims of the '820 patent by making, offering to sell, selling, and/or importing the '820 HTC Devices. Defendants also directly infringe the '820 patent by making, using, selling, offering to sell, and/or importing the '820 HTC Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

23. Specifically, each of the '820 HTC Devices monitor the usage of a plurality of buffers, detect certain pre-selected conditions (e.g., detecting whether there is data in buffers for one, or more than one, radio bearer group), designate buffer status reporting formats, and communicate buffer status reports as claimed in claims 1, 4, 6, 9, 10, 12, 17, 21, and 24 of the '820 patent. *See*, *e.g.*, buffer status reporting implementations in 3GPP TS 36.321.

24. Additionally, Defendants are liable for indirect infringement of the '820 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '820 HTC Devices to practice the claimed methods.

25. At a minimum, Defendants have known of the '820 patent as of service of the original complaint in Civil Action No. 6:13-cv-507 filed in this District on June 25, 2013. Each

Defendant is, however, a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the declared essential patents at issue here. The '820 patent is one such patent, and Defendants have known of the patent application that issued as the '820 patent at least as early as June 2009, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

26. Despite having knowledge of the '820 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '820 patent, including at least claims 1, 4, 6, 9, and 10. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the '820 HTC Devices.

27. In particular, despite having knowledge of the '820 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://www.htc.com/us/support/, for instance) that specifically teach the customers and other end users to use the '820 HTC Devices in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

28. Additionally, Defendants named in this Count know, and have known, that the '820 HTC Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '820 patent and are not staple articles of commerce suitable for substantial non-infringing use.

29. Specifically, each of the '820 HTC Devices contain at least a baseband processor and associated transceiver which contain functionality that is specifically programmed and/or configured to monitor the usage of a plurality of buffers, detect certain pre-selected conditions (e.g., detecting whether there is data in buffers for one, or more than one, radio bearer group), designate buffer status reporting formats, and communicate buffer status reports as claimed in claims 1, 4, 6, 9, 10, 12, 17, 21, and 24 of the '820 patent.

30. Despite having knowledge of the '820 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '820 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '820 patent have been, and continue to be, willful, wanton and deliberate in disregard of CCE's rights.

31. HTC and AT&T test, make, use, offer for sale, sell, and/or import the '820 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

32. HTC and Verizon test, make, use, offer for sale, sell, and/or import the '820 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

33. HTC and Sprint test, make, use, offer for sale, sell, and/or import the '820 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

34. HTC and T-Mobile test, make, use, offer for sale, sell, and/or import the '820 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

35. CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

(INFRINGEMENT OF U.S. PATENT NO. 8,385,966)

36. CCE incorporates paragraphs 1 through 17 herein by reference.

37. CCE is the assignee of the '966 patent, entitled "Method, Apparatus, and Computer Program for Power Control Related to Random Access Procedures" with ownership of all substantial rights in the '966 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements. A true and correct copy of the '966 patent is attached as Exhibit B.

38. The '966 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

39. Defendants HTC, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly infringe one or more claims of the '966 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1-7, 9, and 10-16, by, among other things, making, using, offering for sale, selling and/or importing HTC mobile devices, including, for example: the HTC Desire 510 and HTC Desire 816, sold or otherwise distributed by or through

HTC; the HTC Desire 626, HTC Desire 626s, HTC Desire EYE, HTC One A9, HTC One M9, HTC Desire 610, HTC First, HTC One LTE, HTC One M8, HTC One M8 for Windows, and HTC One mini, sold or otherwise distributed by or through AT&T (the "'966 AT&T Mobile Devices"); the HTC 10 (a.k.a. HTC One M10 a.k.a. HTC 10 Lifestyle), HTC Desire 526, HTC Desire 612, HTC Desire 626, HTC Desire 626s, HTC One M9, HTC One Remix (mini 2), HTC Desire 610, HTC Droid DNA, HTC One M8, HTC One M8 for Windows, HTC One Max, and HTC One Remix (a.k.a. HTC One mini 2), sold or otherwise distributed by or through Verizon (the "'966 Verizon Mobile Devices"), the HTC Desire 626s, HTC One M8 Harman Kardon Edition, HTC One A9, HTC One M9, HTC 8XT, HTC Desire 510, HTC One LTE, HTC One M8, and HTC One Max, sold or otherwise distributed by or through Sprint (the "'966 Sprint Mobile Devices"); and the HTC 10 (a.k.a. HTC One M10 a.k.a. HTC 10 Lifestyle), HTC Desire 626s, HTC Nexus 9 (a.k.a. HTC Volantis), HTC One M9, HTC One LTE, HTC One M8, and HTC One M8 for Windows, sold or otherwise distributed by or through T-Mobile (the "'966 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'966 HTC Devices."

40. Defendants directly infringe the apparatus claims of the '966 patent by making, using, testing, offering to sell, selling, and/or importing the '966 HTC Devices. Defendants also directly infringe the '966 patent by making, using, testing, selling, offering for sale, and/or importing the '966 HTC Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

41. Specifically, each of the '966 HTC Devices initialize a first power control adjustment state for an uplink control channel and a second power control adjustment state for an uplink shared channel, compute an initial transit power for the uplink shared channel using full path loss compensation, and send a message on the uplink shared channel at the initial transmit

power, as recited in claims 1-7, 9, and 10-16 of the '966 patent. *See*, *e.g.*, 3GPP TS 36.213 regarding uplink power control and non-synchronized physical random access procedure.

42. Additionally, Defendants are liable for indirect infringement of the '966 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including, but not limited to, cellular network providers and/or their subscribers) and other end users who use the '966 HTC Devices to practice the claimed methods.

43. Each Defendant has had knowledge of the '966 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012). Each Defendant is, however, a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the declared essential patents at issue here. The '966 patent is one such patent, and Defendants have known of the patent application that issued as the '966 patent at least as early as June 2011, when it was disclosed to 3GPP via ETSI.

44. Despite having knowledge of the '966 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '966 patent, including at least claims 1-7. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the '966 HTC Devices.

45. In particular, despite having knowledge of the '966 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://www.htc.com/us/support/, for instance) that specifically teach the customers and other end users to use the '966 HTC Devices in an

infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

46. Additionally, Defendants named in this Count know, and have known, that the '966 HTC Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '966 patent and are not staple articles of commerce suitable for substantial non-infringing use.

47. Specifically, each of the '966 HTC Devices contain at least a baseband processor, memory, and a transmitter which contains functionality that is specifically programmed and/or configured to at least initialize a first power control adjustment state for an uplink control channel and a second power control adjustment state for an uplink shared channel, compute an initial transit power for the uplink shared channel using full path loss compensation, and send a message on the uplink shared channel at the initial transmit power, as recited in claims 1-7, 9, and 10-16 of the '966 patent.

48. Despite having knowledge of the '966 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '966 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '966 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

49. HTC and AT&T test, make, use, offer for sale, sell, and/or import the '966 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

50. HTC and Verizon test, make, use, offer for sale, sell, and/or import the '966 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

51. HTC and Sprint test, make, use, offer for sale, sell, and/or import the '966 HTC Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

52. HTC and T-Mobile test, make, use, offer for sale, sell, and/or import the '966 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

53. CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

(INFRINGEMENT OF U.S. PATENT NO. 9,037,129)

54. CCE incorporates paragraphs 1 through 17 herein by reference.

55. CCE is the assignee of the '129 patent, entitled "Method, Network and Device for Information Provision by Using Paging and Cell Broadcast Services," with ownership of all substantial rights in the '129 patent, including the right to exclude others and to enforce, sue, and

recover damages for past and future infringements. A true and correct copy of the '129 patent is attached as Exhibit C.

56. The '129 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

57. Defendants HTC, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '129 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 2, 4, 7, 8, and 10 without the consent or authorization of CCE, by or through their making, having made, offering for sale, selling, importing, testing, and/or use of HTC mobile devices, including, for example: the HTC Desire 626, HTC Desire 626s, HTC One A9, HTC One M9, and HTC One LTE, sold or otherwise distributed by or through AT&T (the "'129 AT&T Mobile Devices"); the HTC 10 (a.k.a. HTC One M10 a.k.a. HTC 10 Lifestyle), HTC Desire 526, HTC Desire 626, HTC Desire 626s, and HTC One M9, sold or otherwise distributed by or through Verizon (the "'129 Verizon Mobile Devices"); the HTC Desire 626s, HTC One A9, HTC One M9, and HTC One LTE, sold or otherwise distributed by or through Sprint (the "'129 Sprint Mobile Devices"); and the HTC 10 (a.k.a. HTC One M10 a.k.a. HTC 10 Lifestyle), HTC Desire 626s, HTC One M9, and HTC One LTE, sold or otherwise distributed by or through T-Mobile (the "'129 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'129 HTC Devices."

58. Defendants directly infringe the apparatus claims of the '129 patent by making, using, testing, offering to sell, selling, and/or importing the '129 HTC Devices. Defendants also directly infringe the '129 patent by making, using, selling, offering for sale, and/or importing the '129 HTC Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

59. Specifically, each of the '129 HTC Devices store a group of specific identifiers common to a plurality of terminals supporting an emergency warning, check whether a paging message received from a base station includes at least one specific identifier of the group of the specific identifiers, switch to a broadcast mode for receiving broadcast content on a broadcast channel only if the received paging message includes the at least one specific identifier, and establish at least one of a physical channel and a logical channel only if the received paging message includes a temporary mobile subscriber identity allocated to the terminal, as recited in claims 1, 2, 4, 7, 8, and 10 of the '129 patent. *See*, *e.g.*, the public warning system disclosed in 3GPP TS 22.268 and portions of 3GPP TS 36.331 and 3GPP TS 23.041 which provide protocol specification and cell broadcast service implementation details.

60. Additionally, Defendants are liable for indirect infringement of the '129 patent because they induce and/or contribute to the direct infringement of the patent by their customers (including, but not limited to, cellular network providers and/or their subscribers) and other end users who use the '129 HTC Devices to practice the claimed methods.

61. Each Defendant has had knowledge of the '129 patent, at least as early as service of this Complaint. *See, e.g.*, *Patent Harbor, LLC v. Dreamworks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *17 (E.D. Tex. Jul. 27, 2012).

62. Despite having knowledge of the '129 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '129 patent, including at least claims 1, 2, and 4. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the '129 HTC Devices.

63. In particular, despite having knowledge of the '129 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals,

15

and similar online resources (available via http://www.htc.com/us/support/, for instance) that specifically teach the customers and other end users to use the '129 HTC Devices in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

64. Additionally, Defendants named in this Count know, and have known, that the '129 HTC Devices include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '129 patent and are not staple articles of commerce suitable for substantial non-infringing use.

65. Specifically, each of the '129 HTC Devices contain at least a baseband processor and memory which contains functionality that is specifically programmed and/or configured to at least store a group of specific identifiers common to a plurality of terminals supporting an emergency warning, check whether a paging message received from a base station includes at least one specific identifier of the group of the specific identifiers, switch to a broadcast mode for receiving broadcast content on a broadcast channel only if the received paging message includes the at least one specific identifier, and establish at least one of a physical channel and a logical channel only if the received paging message includes a temporary mobile subscriber identity allocated to the terminal, as recited in claims 1, 2, 4, 7, 8, and 10 of the '129 patent.

66. HTC and AT&T test, make, use, offer for sale, sell, and/or import the '129 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

67. HTC and Verizon test, make, use, offer for sale, sell, and/or import the '129 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

68. HTC and Sprint test, make, use, offer for sale, sell, and/or import the '129 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

69. HTC and T-Mobile test, make, use, offer for sale, sell, and/or import the '129 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, HTC and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

70. CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JOINDER OF PARTIES

71. CCE incorporates paragraphs 1 through 70 herein by reference.

72. On information and belief, AT&T, Verizon, Sprint, and T-Mobile have each purchased or otherwise acquired from HTC certain mobile devices for sale, resale, and/or distribution to their customers (and other end users) that are the subject of Counts I through III

(or some subset thereof). Thus, for these Counts, the right to relief against AT&T, Verizon, Sprint, and/or T-Mobile is asserted jointly and severally with HTC.

73. The alleged infringements set forth in Counts I through III arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the testing, making, using, offering for sale, selling, and/or importing of the HTC mobile devices made the subject of Counts I through III.

74. Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, HTC mobile devices.

75. Thus, joinder of HTC, AT&T, Verizon, Sprint, and T-Mobile is proper in this litigation pursuant to 35 U.S.C. § 299(a).

## JURY DEMAND

CCE hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

CCE requests that the Court find in its favor and against Defendants, and that the Court grant CCE the following relief:

a. Judgment that one or more claims of the '820, '966, and '129 patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others whose infringements have been induced by Defendants and/or by others to whose infringements Defendants have contributed;

b. Judgment that Defendants account for and pay to CCE all damages to and costs incurred by CCE because of Defendants' infringing activities and other conduct complained of herein;

c. Judgment that Defendants account for and pay to CCE a reasonable, ongoing, post-judgment royalty because of Defendants' infringing activities and other conduct complained of herein;

d. That Defendants' infringements relative to the '820 patent and/or the '966 patent be found willful from the time that Defendants became aware of the infringing

nature of their products, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. That CCE be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

f. That CCE be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: **May 31, 2016**                                    Respectfully submitted,

*/s/ Edward R. Nelson III (w/permission Wesley Hill)*
Edward R. Nelson III
ed@nelbum.com
Texas State Bar No. 00797142
Ryan P. Griffin
ryan@nelbum.com
Texas State Bar No. 24053687
Thomas C. Cecil
tom@nelbum.com
Texas State Bar No. 24069489
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Jeffrey R. Bragalone
Texas Bar No. 02855775
Terry A. Saad
Texas Bar No. 24066015
Jonathan H. Rastegar
Texas Bar No. 24064043
BRAGALONE CONROY PC
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
tsaad@bcpc-law.com
jrastegar@bcpc-law.com

        Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
CALDWELL CASSADY & CURRY
2101 Cedar Springs Road, Suite 1000
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
Claire Abernathy Henry
Texas State Bar No. 24053063
WARD, SMITH, & HILL PLLC
P.O. Box 1231
1127 Judson Rd. Ste. 220
Longview, Texas 75606-1231
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com
wh@wsfirm.com
claire@wsfirm.com

**ATTORNEYS FOR CELLULAR COMMUNICATIONS EQUIPMENT LLC**