IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>           Plaintiff<br><br>v.<br><br>HTC AMERICA, INC.,<br><br>           Defendants. | Case No. 6:16-cv-475-RWS-KNM<br>Consolidated LEAD Case<br>JURY TRIAL DEMANDED |
| CELLULAR COMMUNICATIONS EQUIPMENT LLC.,<br><br>           Plaintiff,<br><br>v.<br><br>ZTE (USA) INC., et al.,<br>           Defendants. | Case No. 6:16-cv-476-RWS-KNM<br>JURY TRIAL DEMANDED |

## ANSWER AND COUNTERCLAIMS OF DEFENDANT ZTE (USA) INC. TO SECOND AMENDED COMPLAINT

Defendant ZTE (USA) Inc. ("ZTE") hereby responds to each numbered paragraph of Cellular Communications Equipment LLC's ("CCE" or "Plaintiff") Second Amended Complaint for Patent Infringement, dated March 9, 2018 ("the Complaint"). Each of the paragraphs below corresponds to the same numbered paragraphs in the Complaint. ZTE denies all allegations in the Complaint, whether express or implied, that are not specifically admitted below.

### THE PARTIES

1. ZTE lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and therefore ZTE denies the allegations in that paragraph.

2. ZTE admits that ZTE (USA) Inc. is a New Jersey corporation with its principal place of business in Richardson, Texas, and that it does business in the State of

- 1 -

Texas, although not necessarily in the Eastern District of Texas, and that ZTE (USA) Inc. has been served with process in this action. Except as expressly admitted, ZTE denies the allegations in Paragraph 3 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

3. ZTE admits that the Complaint purports to arise under the patent laws of the United States, including 35 U.S.C. §§ 271, 281, and 284-285. Except as expressly admitted, ZTE denies the allegations in Paragraph 3 of Plaintiff's Complaint.

4. ZTE admits that this Court has subject matter jurisdiction over the claims.

5. Paragraph 5 states a legal conclusion with respect to venue, to which no response is required.

6. To the extent the allegations of Paragraph 6 are directed at ZTE, ZTE admits, for purposes of this action and the counterclaims set forth herein only, that this Court has personal jurisdiction over ZTE, although not necessarily for the reasons alleged in Paragraph 6 of Plaintiff's Complaint. Except as expressly admitted, ZTE denies the allegations of Paragraph 6 directed at ZTE. To the extent the allegations of Paragraph 6 are directed at entities other than ZTE, ZTE lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6, and therefore ZTE denies the allegations in that paragraph.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,055,820)

7.     ZTE incorporates by reference its answers to the allegations set forth in Paragraphs 1-6 as if fully set forth herein.

8.     ZTE admits that U.S. Patent No. 8,055,820 ("the '820 patent") is entitled "Apparatus, System, and Method for Designating a Buffer Status Reporting Format Based on Detected Pre-Selected Buffer Conditions" and that Exhibit A to Plaintiff's Complaint appears to be a copy of the '820 patent. ZTE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 8, and therefore ZTE denies the same.

9.     ZTE denies the allegations in Paragraph 9 of Plaintiff's Complaint.

10.    ZTE denies the allegations in Paragraph 10 of Plaintiff's Complaint.

11.    ZTE denies the allegations in Paragraph 11 of Plaintiff's Complaint.

12.    ZTE denies the allegations in Paragraph 12 of Plaintiff's Complaint.

13.    ZTE denies the allegations in Paragraph 13 of Plaintiff's Complaint.

14.    ZTE admits that the original complaint in Civil Action No. 6:13-cv-507 was filed in this District on June 25, 2013 and that ZTE was later served with that complaint, that ZTE Corporation has been a 3GPP member organization, that 3GPP solicits identification of standard essential patents, and that the '820 patent was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI") in June 2009. Except as expressly admitted, ZTE denies the allegations of Paragraph 14 directed at ZTE.

15.    ZTE denies the allegations in Paragraph 15 of Plaintiff's Complaint.

16.    ZTE denies the allegations in Paragraph 16 of Plaintiff's Complaint.

17.    ZTE denies the allegations in Paragraph 17 of Plaintiff's Complaint.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 8,385,966)

18.    ZTE incorporates by reference its answers to the allegations set forth in Paragraphs 1-17 as if fully set forth herein.

19.     ZTE admits that U.S. Patent No. 8,385,966 ("the '966 patent") is entitled "Method, Apparatus, and Computer Program for Power Control Related to Random Access Procedures " and that Exhibit B to Plaintiff's Complaint appears to be a copy of the '966 patent.  ZTE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 19, and therefore ZTE denies the same.

20.     ZTE denies the allegations in Paragraph 20 of Plaintiff's Complaint.

21.     ZTE denies the allegations in Paragraph 21 of Plaintiff's Complaint.

22.     ZTE denies the allegations in Paragraph 22 of Plaintiff's Complaint.

23.     ZTE denies the allegations in Paragraph 23 of Plaintiff's Complaint.

24.     ZTE denies the allegations in Paragraph 24 of Plaintiff's Complaint.

25.     ZTE admits that it was served with the First Amended Original Complaint in this matter, that ZTE Corporation has been a 3GPP member organization, that 3GPP solicits identification of standard essential patents, and that the '966 patent was disclosed to 3GPP via ETSI in June 2011.  Except as expressly admitted, ZTE denies the allegations of Paragraph 25 directed at ZTE.

26.     ZTE denies the allegations in Paragraph 26 of Plaintiff's Complaint.

27.     ZTE denies the allegations in Paragraph 27 of Plaintiff's Complaint.

28.     ZTE denies the allegations in Paragraph 28 of Plaintiff's Complaint.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 9,037,129)

29.     ZTE incorporates by reference its answers to the allegations set forth in Paragraphs 1-28 as if fully set forth herein.

30.     ZTE admits that U.S. Patent No. 9,037,129 ("the '129 patent") is entitled "Method, Network and Device for Information Provision by Using Paging and Cell Broadcast Services" and that Exhibit C to Plaintiff's Complaint appears to be a copy of the '129 patent.  ZTE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 30, and therefore ZTE denies the same.

31.     ZTE denies the allegations in Paragraph 31 of Plaintiff's Complaint.

32.    ZTE denies the allegations in Paragraph 32 of Plaintiff's Complaint.

33.    ZTE denies the allegations in Paragraph 33 of Plaintiff's Complaint.

34.    ZTE denies the allegations in Paragraph 34 of Plaintiff's Complaint.

35.    ZTE denies the allegations in Paragraph 35 of Plaintiff's Complaint.

36.    ZTE admits that ZTE was served with the First Amended Original Complaint.  Except as expressly admitted, ZTE denies the allegations of Paragraph 36 directed at ZTE.

37.    ZTE denies the allegations in Paragraph 37 of Plaintiff's Complaint.

38.    ZTE denies the allegations in Paragraph 38 of Plaintiff's Complaint.

39.    ZTE denies the allegations in Paragraph 39 of Plaintiff's Complaint.

## WILLFULNESS

40.    ZTE denies the allegations in Paragraph 40 of Plaintiff's Complaint.

41.    ZTE denies the allegations in Paragraph 41 of Plaintiff's Complaint.

## JURY DEMAND

CCE's demand for a jury trial requires no response from ZTE.

## PRAYER FOR RELIEF

ZTE denies that CCE is entitled to any relief whatsoever, either as prayed for in its Complaint or otherwise.

## AFFIRMATIVE DEFENSES

42.    ZTE asserts the following defenses, without assuming the burden of proof when such burden would otherwise be on the Plaintiff, to the allegations in CCE's Complaint.  ZTE reserves the right to amend its answer, including asserting additional defenses and counterclaims, as this matter progresses.

## FIRST DEFENSE
### (Non-Infringement)

43.    CCE is not entitled to any relief against ZTE because ZTE does not infringe and has not infringed, either directly, jointly, indirectly, contributorily, or by inducement,

any valid and enforceable claim of the patents-in-suit, either literally or under the doctrine of equivalents, willfully or otherwise.

## SECOND DEFENSE
### (Invalidity)

44.     One or more claims of the patents-in-suit is invalid for failing to meet one or more of the conditions for patentability under Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112 and/or 116, and the applicable provisions of Title 37 of the Code of Federal Regulations.

45.     Upon information and belief, the '820 Patent fails to identify and/or join all of the true inventors of the '820 Patent.

46.     Upon information and belief, Mr. Sebire derived the subject matter of the alleged information of the '820 patent, in whole or in part, from information that he obtained from others during his participation in standards development activities such as his participation in 3GPP TSG-RAN Working Group 2 relating to buffer status reporting prior to the alleged priority date of November 5, 2007 for the '820 patent.

47.     On information and belief, the persons from whom Mr. Sebire derived the alleged invention from include 3GPP TSG-RAN Working Group 2 standards representatives, including representatives from Ericsson, Qualcomm Europe, Samsung, NTT DoCoMo, Alcatel, LG, NEC, and any others who participated in the standardization activities relating to buffer status reporting.

48.     On information and belief, Mr. Sebire derived the alleged invention of the '820 patent from information presented in one or more of the standards proposals submitted to the 3GPP TSG-RAN WG2 working group and meeting minutes:  Standards Proposal R2-073211 entitled "Buffer Reporting for LTE UL"; Standards Proposal R2-074434 entitled "Use of MAC Padding"; Standards Proposal R2-042462 entitled "Control Information Transfer In MAC Layer"; Standards Proposal "R2-074245 entitled "Discussion on Scheduling Request"; Standards Proposal R2-063414 entitled "Scheduling Information

Report for E-UTRAN"; Standards Proposal R2-074682 entitled "Uplink Scheduling Information in E-UTRAN"; Standards Proposal R2-074691 entitled "Framework for Scheduling Request and Buffer Status Reporting"; Standards Proposal R2-072515 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Report R2-075432 entitled "Report of LTE User Plane Session." (collectively, "Material Standards Documents"). The facts surrounding Mr. Sebire's derivation and the Material Standards Documents are material to the patentability of the '820 patent.

49.     On information and belief, Mr. Sebire attended 3GPP TSG-RAN Working Group 2 meetings, including 3GPP TSG-RAN WG2 Meeting #60 held on November 5-9, 2007, on behalf of Nokia with representatives of other members.  The other members include Ericsson, Qualcomm Europe, Samsung, NTT DoCoMo, Alcatel, LG, NEC.

50.     On information and belief, in at least the weeks leading up to the 3GPP TSG-RAN WG2 Meeting #60 on November 5-9, 2007, members of the 3GPP TSG-RAN Working Group 2, circulated presentations and proposals to other group members, including Mr. Sebire, discussing issues including, but not limited to, buffer status reporting and selection criteria needed for selecting a buffer.  On information and belief, certain presentations and proposals were conceived and drafted and by representatives of Ericsson, including but not limited to the MAC LTE Workshop that addressed the selection of buffer status reports.  During the meetings and through these presentations and proposals, other members of the 3GPP TSG-RAN Working Group 2, including Ericsson representatives, contributed to the conception and reduction to practice of the alleged invention of the '820 Patent claims.

51.     On information and belief, the contributions of other members through presentations, proposals, and meeting materials are significant to the alleged invention the '820 patent claims.

52.    On information and belief, despite the significant contributions to the subject matter the '820 purports to claim by other members of the 3GPP TSG-RAN Working Group 2, only Mr. Sebire is listed as an inventor on the '820 Patent, rendering the claims of the '820 patent invalid under 35 U.S.C. § 102 (f) and 35 U.S.C. § 116 due to nonjoinder of joint inventors and/or derivation.

### THIRD DEFENSE
#### (No Injunctive Relief)

53.    CCE is not entitled to injunctive relief because any alleged injury to CCE is not immediate or irreparable, and CCE has an adequate remedy at law for any alleged injury.

### FOURTH DEFENSE
#### (Limitation on Recovery)

54.    CCE's claims for relief are barred in whole or in part, including without limitation by 35 U.S.C. §§ 286 and/or 287.  For example, despite the fact that Qualcomm has a license to the patents-in-suit, CCE has failed come forward with affirmative proof that Qualcomm has ever properly marked component chipsets, including but not limited to each Qualcomm baseband processor model used in the accused ZTE products.

55.    To the extent the patents in the Complaint are found to be essential to any ETSI standard and to the extent any of the alleged inventions described in and allegedly covered by any of the patents asserted in the Complaint are used, manufactured, or sold by or for ZTE, its suppliers, and/or its customers, CCE's claims for relief are barred in whole or in part because ZTE has the irrevocable right to be licensed on FRAND terms under those patents.

### FIFTH DEFENSE
#### (Preclusion of Costs)

56.    To the extent that any claim of the patents-in-suit is held to be invalid, CCE must be precluded from recovering costs related to this action pursuant to 35 U.S.C. § 288.

## SIXTH DEFENSE
### (Prosecution History Estoppel and/or Disclaimer)

57. By reason of proceedings in the United States Patent and Trademark Office during prosecution of the patents-in-suit, and specifically statements, arguments, amendments, assertions, and/or representations made by or on behalf of the applicants for the patents-in-suit, CCE is estopped from asserting any construction of the claims of the patents-in-suit that would cover any product, method, or service of ZTE, and/or is estopped to construe the claims of the patents-in-suit in any way to cover any product, method, or service of ZTE under the doctrine of equivalents.

## SEVENTH DEFENSE
### (License and/or Exhaustion)

58. To the extent that CCE's accusations of infringement relate to products or services that were provided by or for any licensee of the patents-in-suit or under a covenant not to sue, whether express or implied, and/or provided to ZTE by or through a licensee of the patents-in-suit or under a covenant not to sue, whether express or implied, and/or are otherwise subject to the doctrine of patent exhaustion, CCE's claims are barred. On information and belief, ZTE has rights arising from the use of Qualcomm Incorporated ("Qualcomm") components in certain ZTE devices. On information and belief, Qualcomm and/or Samsung entered into license agreements with CCE, Acacia, Nokia, and/or affiliates by which Qualcomm, Samsung, ZTE and/or others received, among other things, certain rights related to the patents-in-suit and other CCE patents. ZTE has an express or implied license to manufacture, use, import, and sell electronic devices incorporating licensed Qualcomm components.

## EIGHTH DEFENSE
### (No Willful Infringement)

59. CCE has alleged no facts, and ZTE has not engaged in any conduct, that entitled CCE to treble damages based on alleged willful infringement.

**NINTH DEFENSE**
**(Government Sales)**

60.     To the extent that ZTE's accused products have been made, used, sold, or offered for sale to the United States Government, any and all remedies may be had only by action against the United States pursuant to 28 U.S.C. § 1498.

**TENTH DEFENSE**
**(License, Waiver, Consent, Unclean Hands, Laches and/or Estoppel)**

61.     CCE's claims of patent infringement against ZTE are barred in whole or in part by the doctrines of license, waiver, consent, unclean hands, laches and/or estoppel.

62.     CCE and/or its predecessors have engaged in standard-setting misconduct including, but not limited to, CCE and/or its predecessors breach of its commitment to offer FRAND license terms for the patents asserted against ZTE and its breach of its duty to disclose its IP under relevant standards setting organizations IPR policies.

**ELEVENTH DEFENSE**
**(Acts of Others)**

63.     The claims made in the Complaint are barred, in whole or in part, because ZTE is not liable for the acts of others over whom it has no control.

**TWELFTH DEFENSE**
**(No Causation)**

64.     CCE's claims against ZTE are barred because CCE's damages, if any, were not caused by ZTE.

**THIRTEENTH DEFENSE**
**(Inequitable Conduct)**

65.     ZTE incorporates by reference paragraphs 1-64 as if fully set forth herein.

66.     The '820 patent is invalid because the alleged inventor, Mr. Benoist Sebire, and/or others involved in the prosecution of the '820 patent committed inequitable conduct

by intentionally failing to disclose material prior art to the United States Patent and Trademark Office ("USPTO").

67.     Upon information and belief, the alleged inventor of the '820 patent, Mr. Benoist Sebire, did not invent the subject matter of the '820 patent in whole or in part.

68.     Mr. Sebire was an active participant in 3GPP standardization activities. He served as a 3GPP standards representative for Nokia in at least the 3GPP TSG-RAN Working Group 2.  Mr. Sebire received standards proposals from numerous standards representatives of other companies, attended standards meetings along with representatives of other companies, and participated in 3GPP standards body discussions with others pertaining to the alleged invention in the '820 patent.

69.     Upon information and belief, Mr. Sebire derived the subject matter of the alleged information of the '820 patent, in whole or in part, from information that he obtained from others during his participation in standards development activities such as his participation in 3GPP TSG-RAN Working Group 2 relating to buffer status reporting prior to the alleged priority date of November 5, 2007 for the '820 patent.

70.     The persons from whom Mr. Sebire derived the alleged invention from include 3GPP TSG-RAN Working Group 2 standards representatives, including representatives from Ericsson, Qualcomm Europe, Samsung, NTT DoCoMo, Alcatel, LG, NEC, and any others who participated in the standardization activities relating to buffer status reporting.

71.     On information and belief, Mr. Sebire derived the alleged invention of the '820 patent from information presented in one or more of the standards proposals submitted to the 3GPP TSG-RAN WG2 working group and meeting minutes:  Standards Proposal R2-073211 entitled "Buffer Reporting for LTE UL"; Standards Proposal R2-074434 entitled "Use of MAC Padding"; Standards Proposal R2-042462 entitled "Control Information Transfer In MAC Layer"; Standards Proposal "R2-074245 entitled "Discussion on Scheduling Request"; Standards Proposal R2-063414 entitled "Scheduling Information Report for E-UTRAN"; Standards Proposal R2-074682 entitled "Uplink Scheduling

Information in E-UTRAN"; Standards Proposal R2-074691 entitled "Framework for Scheduling Request and Buffer Status Reporting"; Standards Proposal R2-072515 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Report R2-075432 entitled "Report of LTE User Plane Session." (collectively, "Material Standards Documents"). The facts surrounding Mr. Sebire's derivation and the Material Standards Documents are material to the patentability of the '820 patent.

72.     Upon information and belief, Mr. Sebire, and/or others involved in the prosecution of the '820 patent knew the Material Standards Documents are material to the patentability of the '820 patent.

73.     Upon information and belief, Mr. Sebire and/or Nokia also knew that he had a duty under the 3GPP Working Procedures to disclose any intellectual property rights related to the 3GPP Standardization.  Upon information and belief, at no time did Mr. Sebire disclose the application and/or '820 patent.

74.     Upon information and belief, Mr. Sebire, and/or others involved in the prosecution of the '820 patent intentionally withheld the facts surrounding Mr. Sebire's derivation and the Material Standards Documents from the patent examiner during the prosecution of the '820 patent, including but not limited to Standards Proposal R2-074682, But for Mr. Sebire and/or the others involved in the prosecution of the '820 patents' intentionally withholding of this material information, the '820 patent would not have issued.

## FOURTEENTH DEFENSE
### (Improper Inventorship)

75.     ZTE incorporates by reference paragraphs 1-74 as if fully set forth herein.

76.     Upon information and belief, the '820 Patent lists Mr. Benoist Sebire as the sole inventor, but Mr. Sebire did not invent the subject matter of the '820 patent in whole or in part.

77.     Upon information and belief, the representatives of the 3GPP TSG-RAN Working Group 2, including representatives from Ericsson, Qualcomm Europe, Samsung, NTT DoCoMo, Alcatel, LG, NEC, and any others who participated in the standardization activities relating to buffer status reporting, significantly contributed to the conception and reduction to practice of the alleged invention of the '820 patent but were not listed as inventors on the '820 patent.

78.     Upon information and belief, the subject matter of the alleged information of the '820 patent was conceived and developed, in whole or in part, from information that Mr. Sebire obtained from others during his participation in standards development activities such as his participation in 3GPP TSG-RAN Working Group 2 relating to buffer status reporting prior to the alleged priority date of November 5, 2007 for the '820 patent.

79.     On information and belief, the information contributed by members of the 3GPP TSG-RAN Working Group 2 Mr. Sebire to the alleged invention of the '820 patent was presented in one or more of the standards proposals submitted to the 3GPP TSG-RAN WG2 working group and meeting minutes:  Standards Proposal R2-073211 entitled "Buffer Reporting for LTE UL"; Standards Proposal R2-074434 entitled "Use of MAC Padding"; Standards Proposal R2-042462 entitled "Control Information Transfer In MAC Layer"; Standards Proposal "R2-074245 entitled "Discussion on Scheduling Request"; Standards Proposal R2-063414 entitled "Scheduling Information Report for E-UTRAN"; Standards Proposal R2-074682 entitled "Uplink Scheduling Information in E-UTRAN"; Standards Proposal R2-074691 entitled "Framework for Scheduling Request and Buffer Status Reporting"; Standards Proposal R2-072515 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Report R2-075432 entitled "Report of LTE User Plane Session." (collectively, "Material Standards Documents"). The facts surrounding Mr. Sebire's derivation and the Material Standards Documents are material to the patentability of the '820 patent.  On information and belief, Mr. Sebire attended 3GPP TSG-RAN Working Group 2 meetings on behalf of Nokia with

representatives of other delegates, including Ericsson, Qualcomm Europe, Samsung, NTT DoCoMo, Alcatel, LG, NEC. In preparation for the 3GPP TSG-RAN WG2 Meeting #60 held on November 5-9, 2007, members of the 3GPP TSG-RAN Working Group 2, circulated presentations and proposals to other group members, including Mr. Sebire, discussing issues including, but not limited to, buffer status reporting and selection criteria needed for selecting a buffer. On information and belief, certain presentations and proposals were conceived and drafted and by Ericsson, including but not limited to materials for the MAC LTE Workshop that addressed the selection of buffer status reports. During the meetings and through these presentations, notes, and proposals, other members of the 3GPP TSG-RAN Working Group 2, including Ericsson representatives, contributed to the conception and reduction to practice of the alleged invention of the '820 Patent claims.

80. On information and belief, Mr. Sebire attended the MAC LTE Workshop in or around October 2007 and, as the rapporteur of the 3GPP TSG-RAN Working Group 2, circulated summary notes and information based on the discussion, presentations, and other members' contributions at the MAC LTE Workshop shortly after the October 2007 meeting and prior to the 3GPP TSG-RAN WG2 Meeting #60 on November 5-9, 2007.

81. On information and belief, based in whole or in part on the summary notes, presentations, and other meeting materials, the 3GPP TSG-RAN Working Group 2 developed through joint collaboration Material Standard Documents in anticipation of the TSG-RAN WG2 Meeting #60 on November 5-9, 2007, including the 3GPP Proposal R2-074682 entitled "Uplink Scheduling Information in E-UTRAN."

82. On information and belief, certain text and figures from 3GPP Proposal R2-074682 was included in the provisional patent application that ultimately became the '820 patent.

83. On information and belief, despite the significant contributions to the subject matter and conception of the alleged invention of the '820 patent, no one other than Mr. Sebire is listed as an inventor on the '820 Patent. On information, the contributions of the

TSG-RAN Working Group was significant in quality relative to the alleged invention of the '820 Patent. Failure to list other inventors, including but not limited members of the 3GPP TSG-RAN Working Group 2, who significantly contributed renders the claims of the '820 patent invalid.

## COUNTERCLAIMS

ZTE (USA) Inc. ("Counterclaimant" or "ZTE") allegesCounterclaims against Cellular Communications Equipment LLC ("CCE") as follows:

## PARTIES

1.      ZTE (USA) Inc. Corporation is a corporation organized and existing under the laws of the state of New Jersey, with its principal place of business in Richardson, Texas.

2.      According to CCE's Original Complaint for Patent Infringement, CCE is a Texas limited liability company with its principal place of business in Plano, Texas.

## JURISDICTION AND VENUE

3.      These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* and under the declaratory judgment act, 28 U.S.C. §§ 2201 and 2202, based upon an actual controversy between Counterclaimants and CCE.

4.      Subject to Counterclaimant's affirmative defenses and denials, Counterclaimant alleges that to the extent this Court has jurisdiction over CCE's claims against Counterclaimant, this Court has subject matter jurisdiction over these counterclaims pursuant to, without limitation, 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5.      This Court has personal jurisdiction over CCE because CCE subjected itself to the jurisdiction of this Court through its Original Complaint for Patent Infringement.

6.      To the extent that venue over CCE's claims is proper, venue is proper in this District for these Counterclaims pursuant to 28 U.S.C. § 1391(b)-(c).

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8.055,820)

7.      Counterclaimant incorporates and realleges Paragraphs 1-6 of its Counterclaims as if fully set forth herein.

8.      By its Complaint, CCE asserts that Counterclaimant has infringed United States Patent No. 8,055,820 ("the '820 patent").

9.      Counterclaimant has denied CCE's claim of infringement of the '820 patent and contend that it does not infringe any valid or enforceable claim of the '820 patent.

10.     An actual, immediate, and justiciable controversy has thus arisen between CCE and Counterclaimant concerning the alleged infringement of the '820 patent.

11.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaimant is entitled to judgment from this Court that Counterclaimant does not infringe, directly or indirectly, the '820 patent.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent No. 8,055,820)

12.     Counterclaimant incorporates and realleges Paragraphs 1-11 of its Counterclaims as if fully set forth herein.

13.     CCE has asserted in its Complaint claims of patent infringement against Counterclaimant based on the '820 patent.  Counterclaimant has denied that it has infringed or is infringing any valid claim of the '820 patent.  By the Complaint, CCE alleges that the '820 patent is valid.  Counterclaimant has denied those allegations and contends that one or more claims of the '820 patent are invalid for failing to satisfy one or more of the statutory requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

14.     An actual, immediate, and justiciable controversy thus has arisen between CCE and Counterclaimant with respect to the validity of the '820 patent.

15.     The claims of the '820 patent are invalid for failing to meet one or more of the requirements and/or conditions for patentability under various sections of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

16.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaimant is entitled to judgment from this Court that the '820 patent is not valid.

### THIRD COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,385,966)

17.     Counterclaimant incorporates and realleges Paragraphs 1-16 of its Counterclaims as if fully set forth herein.

18.     By its Complaint, CCE asserts that Counterclaimant has infringed United States Patent No. 8,385,966 ("the '966 patent").

19.     Counterclaimant has denied CCE's claim of infringement of the '966 patent and contend that it does not infringe any valid or enforceable claim of the '966 patent.

20.     An actual, immediate, and justiciable controversy has thus arisen between CCE and Counterclaimant concerning the alleged infringement of the '966 patent.

21.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaimant is entitled to judgment from this Court that Counterclaimant does not infringe, directly or indirectly, the '966 patent.

### FOURTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent No. 8,385,966)

22.     Counterclaimant incorporates and realleges Paragraphs 1-21 of its Counterclaims as if fully set forth herein.

23.     CCE has asserted in its Complaint claims of patent infringement against Counterclaimant based on the '966 patent.  Counterclaimant has denied that it has infringed or are infringing any valid claim of the '966 patent.  By the Complaint, CCE alleges that the '966 patent is valid.  Counterclaimant has denied those allegations and contends that one or more claims of the '966 patent are invalid for failing to satisfy one or more of the statutory

requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

24.     An actual, immediate, and justiciable controversy thus has arisen between CCE and Counterclaimant with respect to the validity of the '966 patent.

25.     The claims of the '966 patent are invalid for failing to meet one or more of the requirements and/or conditions for patentability under various sections of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

26.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaimants are entitled to judgment from this Court that the '966 patent is not valid.

## FIFTH COUNTERCLAIM
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,037,129)**

27.     Counterclaimant incorporates and realleges Paragraphs 1-26 of its Counterclaims as if fully set forth herein.

28.     By its Complaint, CCE asserts that Counterclaimant has infringed United States Patent No. 9,037,129 ("the '129 patent").

29.     Counterclaimant has denied CCE's claim of infringement of the '129 patent and contends that it does not infringe any valid or enforceable claim of the '129 patent.

30.     An actual, immediate, and justiciable controversy has thus arisen between CCE and Counterclaimants concerning the alleged infringement of the '129 patent.

31.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaimants are entitled to judgment from this Court that Counterclaimants do not infringe, directly or indirectly, the '129 patent.

## SIXTH COUNTERCLAIM
**(Declaratory Judgment of Invalidity of U.S. Patent No. 9,037,129)**

32.     Counterclaimant incorporates and realleges Paragraphs 1-31 of its Counterclaims as if fully set forth herein.

33.     CCE has asserted in its Complaint claims of patent infringement against Counterclaimants based on the '129 patent.  Counterclaimant has denied that it has infringed or are infringing any valid claim of the '129 patent.  By the Complaint, CCE alleges that the '129 patent is valid.  Counterclaimant has denied those allegations and contend that one or more claims of the '129 patent are invalid for failing to satisfy one or more of the statutory requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

34.     An actual, immediate, and justiciable controversy thus has arisen between CCE and Counterclaimant with respect to the validity of the '129 patent.

35.     The claims of the '129 patent are invalid for failing to meet one or more of the requirements and/or conditions for patentability under various sections of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

36.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Counterclaimant is entitled to judgment from this Court that the '129 patent is not valid.

## SEVENTH COUNTERCLAIM
### (Declaratory Judgement That ZTE is Licensed to Practice the Asserted Patents)

59.     Counterclaimant incorporates and reallege Paragraphs 1-36 of its Counterclaims as if fully set forth herein.

60.     On information and belief and by way of example without limitation, ZTE has rights arising from the use of Qualcomm Incorporated ("Qualcomm") components in certain ZTE devices.  On information and belief, Qualcomm and/or Samsung entered into license agreements with CCE, Acacia, Nokia, and/or affiliates by which Qualcomm, Samsung, ZTE and/or others received, among other things, certain rights related to the patents-in-suit and other CCE patents (collectively, "the Licensed Patents").  ZTE has an express or implied license to manufacture, use, import, and sell electronic devices incorporating licensed Qualcomm components under the Licensed Patents.

61.     Notwithstanding this license, CCE alleged infringement and is seeking compensation for products that are licensed. ZTE has been forced to expend resources resolving this dispute, and is threatened by the loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

### EIGHTH COUNTERCLAIM
**(Equitable Estoppel)**

62.     Counterclaimant incorporates and realleges Paragraphs 1-61 of its Counterclaims as if fully set forth herein.

63.     In the course of its participation in ETSI, CCE and/or its predecessors represented to ETSI, ETSI members, and third parties that it would grant irrevocable licenses to the Alleged Standard Essential Patents on FRAND terms and conditions.

64.     CCE and/or its predecessors membership and activities, including the declarations it made to comply with ETSI's IPR policy for the Alleged Standard Essential Patents, created a false and misleading impression among ETSI, ETSI members (including ZTE), and/or third parties that CCE and/or its predecessors would license those patents on FRAND terms and conditions.

65.     In reliance on CCE's and/or its predecessors' representations, ZTE made substantial investments in the research, design, development, manufacture, and marketing of mobile handsets.

66.     As a result of the acts in the foregoing paragraphs, an actual controversy exists between ZTE and CCE.

67.     As a result, ZTE will be harmed materially if CCE is permitted to assert its alleged patent rights to the Alleged Standard Essential Patents against ZTE seeking more than FRAND royalties.

## NINTH COUNTERCLAIM
### (Declaration of FRAND Royalties)

68.     Counterclaimant incorporates and realleges Paragraphs 1-67 of its Counterclaims as if fully set forth herein.

69.     A judicial declaration is necessary and appropriate so that ZTE may ascertain its rights regarding the Alleged Standard Essential Patents.

70.     To the extent the Alleged Standard Essential Patents are actually essential to the ETSI standard as alleged by CCE, the CCE must (a) select as a royalty base, at most, the smallest saleable unit substantially embodying each individual Alleged Standard Essential Patent, and (b) apply to that royalty base a reasonable royalty rate that reflects the actual technical contribution to the standard that is attributable to the patent.

71.     As a result of the acts in the foregoing paragraphs, an actual controversy exists between ZTE and CCE.

72.     As an alternative to its requests for non-infringement and invalidity or a finding that CCE's claims are barred for breach of contract or equitable estoppel, ZTE is entitled to a judicial declaration that sets a FRAND royalty for each individual Alleged Standard Essential Patent.

## PRAYER FOR RELIEF

Wherefore, ZTE respectfully requests that the Court enter judgment against CCE and grant ZTE the following relief:

a.     Dismiss the Complaint in its entirety with prejudice, deny all relief requested by CCE, and find that CCE takes nothing by its claims against ZTE;

b.     Enter judgment in favor of ZTE, and against CCE on the Complaint;

c.     Declare that ZTE has not infringed, and is not infringing, directly or indirectly, the '820, '966 and/or '129 patents;

d.     Declare that the claims of the '820, '966 and/or '129 patents are invalid;

e.      As an alternative, for any Alleged ZTE Asserted Patent found to be actually essential to an ETSI standard, a declaration of a FRAND royalty that (a) uses a royalty base of (at most) the smallest saleable unit substantially embodying the claimed invention and (b) sets a reasonable rate applied to that royalty base that reflects the actual technical contribution to the standard that is attributable to the patent;

f.      CCE be enjoined from seeking any royalties in this Court or in any forum or otherwise for the Alleged Standard Essential Patents in excess of FRAND terms and conditions;

g.      Enjoin CCE, its assigns, and all those in privity therewith from asserting the '820, '966 and/or '129 patents against ZTE or any of its customers or suppliers;

h.      Declare that this is an exceptional case under 35 U.S.C. § 285 and award to ZTE its costs, expenses, and recoverable attorney's fees; and

i.      Grant ZTE such other and further relief as the Court deems appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

ZTE respectfully requests a trial by jury on all issues so triable.

Dated:  March 30, 2018                       Respectfully submitted,


By */s/ Nicole S. Cunningham*
    Callie A. Bjurstrom (CA SBN)
    callie.bjurstrom@pillsburylaw.com
    Steven A. Moore (CA SBN 232114)
    steve.moore@pillsburylaw.com
    Nicole S. Cunningham (CA SBN 234390)
    nicole.cunningham@pillsburylaw.com
    PILLSBURY WINTHROP SHAW PITTMAN LLP
    501 West Broadway, Suite 1100
    San Diego, CA 92101
    Phone: 619.544.3119
    Fax: 619-236-1995

*Attorneys for Defendant and Counterclaimant*
*ZTE (USA) Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being serviced with a copy of this **ANSWER AND COUNTERCLAIMS OF DEFENDANT ZTE (USA) INC. TO SECOND AMENDED COMPLAINT,** *via* the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 30th day of March, 2018.

*/s/Nicole S. Cunningham*
Nicole S. Cunningham